**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| TONY JOYNER, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. EA-25-1300 |
| WALMART, INC., *et al.*, | * | |
| Defendants. | * | |

**MEMORANDUM OPINION**

On March 18, 2025, Plaintiff Tony Joyner initiated the above-captioned action in the Circuit Court for Baltimore County, Maryland, in which he asserted a negligence claim against Defendant Walmart, Inc.  ECF Nos. 1-1; 5.  After the case was removed to this Court on the basis of diversity jurisdiction (ECF No. 1), Mr. Joyner filed an Amended Complaint in which he asserts negligence claims against Walmart, Inc. and Wal-Mart Stores East, LP (collectively, Walmart) (ECF No. 19).  Pending before the Court are Walmart's motions for summary judgment and to exclude the testimony of two witnesses, each of which is fully briefed.  ECF Nos. 32, 34, 36; ECF Nos. 33, 35, 37; ECF Nos. 38–40.  No hearing is necessary.  Local Rule 105.6 (D. Md. Dec. 1, 2025).  For the reasons set forth below, the motion to exclude expert testimony (ECF No. 33) is granted, and the motions for summary judgment (ECF No. 32) and to exclude the testimony of a damages witness (ECF No. 38) are denied.

## I.    BACKGROUND

In his Amended Complaint, Mr. Joyner alleged that on January 19, 2024, he went to a Walmart store located at 8730 Liberty Road, Randallstown, Maryland.  ECF No. 19 ¶¶ 8–9, 25–26.  While Mr. Joyner "was in the process of utilizing the customer restroom facilities . . . the toilet seat disconnected from the toilet bowl, causing [him] to fall from the toilet, hit his head[,] and suffer personal injuries."  *Id.* at ¶ 10, 27.  After his fall, Mr. Joyner observed that "the bolts

attaching the seat to the toilet bowl were not properly secured." *Id.* at ¶ 11, 28.  Among other things, Mr. Joyner asserts that Walmart created a dangerous condition by improperly securing the toilet seat to the bowl, and that Walmart had actual and constructive knowledge that this hazardous and dangerous condition existed and failed to provide adequate warning to its invitees. *Id.* at ¶¶ 13, 16–18, 30, 34–36.

The undisputed facts establish that on January 19, 2024, at approximately 2:00 pm, Mr. Joyner had to use the restroom while he was shopping at a Walmart store in Randallstown.  ECF No. 32-5 at 1.[1]  Mr. Joyner testified at his deposition that upon entering the bathroom, his main concern was whether it was clean.  ECF No. 32-2 at 37:4–6.  He decided to use the bathroom because it was "spotless."  *Id.* at 31:5–6; *see also id*. at 30:20, 37:6–7 (describing the bathroom as "clean").  Mr. Joyner did not see any warnings or caution cones in the area before the incident. *Id.* at 47:15–17; ECF No. 32-4 at 1.  "[I]t was not obvious . . . that anything was wrong with" the bathroom.  ECF No. 32-2 at 31:7–9.  Mr. Joyner looked at the toilet seat before sitting down and did not notice anything out of place.  *Id.* at 31:10–14.  The toilet seat was not "off[-]center[ ] or lopsided in any way" and "did not appear broken"; instead, "[i]t looked perfect."  *Id*. at 47:12–14; ECF No. 32-4 at 1.  When he sat down, the toilet seat felt "secure," "like normal," and "did not seem unstable"  ECF Nos. 32-2 at 49:8–10; 32-4 at 2.  While Mr. Joyner was using the facilities, "the seat started raising up," and as he "lifted up a little bit, the seat just slid."  ECF No. 32-2 at 37:10–12.  Mr. Joyner "jumped up . . . but that caused . . . an imbalance and [he] fell back."  *Id.* at 49:19–21.  Mr. Joyner's left side and head hit the floor.  *Id*. at 50:12–13.  Mr. Joyner did not lose consciousness.  *Id.* at 56:2–3.  He "laid on the floor . . . and called for help,"

---

[1]  Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files system (CM/ECF) printed at the top of the cited document, except that page numbers of exhibits that are deposition transcripts refer to the page and line number of the deposition transcript.

but when no one came, he got up. *Id.* at 37:16–17, 22. He then cleaned himself up and went to get help. *Id.* at 38:1–3. There were no nuts securing the toilet seat to the toilet bowl, and Mr. Joyner did not see any nuts or bolts on the restroom floor. ECF No. 32-4 at 2. Mr. Joyner does not know how the nuts went missing. *Id.* at 3. No one witnessed the incident. ECF Nos. 32-2 at 68:1. Mr. Joyner declined medical treatment and ambulance transport and took himself to the hospital. *Id.* at 68:5–14, 73:14.

Coleman Johnson, a Walmart maintenance worker, testified that as part of his duties he cleans the toilets. ECF No. 32-7 at 11:17. When cleaning the toilet, Mr. Johnson lifts the toilet seat. *Id.* at 17:21–24; *see also id.* at 16:22–17:1 (Mr. Johnson testifying that when cleaning the toilet area of the bathroom, he cleans "the bathroom stalls, sterilize[s] them, make[s] sure . . . the seats and stuff is on there and . . . make[s] sure everything is proper."). On January 19, 2024, Mr. Johnson checked the toilets at approximately 7:30 am and "everything was normal." *Id.* at 13:1–4. Upon review of an excerpt from the Walmart store video depicting the entrance to the restroom area, Mr. Johnson confirmed that he entered the men's bathroom at approximately 1:14 pm that day. *Id.* at 15:7–18; ECF No. 32-8. The Walmart store video excerpt depicts Mr. Johnson exiting the men's bathroom at approximately 1:19 pm and remaining in the bathroom hallway until approximately 1:21 pm, at which time he entered the women's bathroom. ECF No. 32-8. At an unknown time that same day, a man told Mr. Johnson that "someone needs to fix th[e] toilet seat or somebody's going to get hurt." ECF No. 32-7 at 12:15–18, 13:15–18, 27:7–8. Mr. Johnson initially testified that this man approached him at approximately 1:14 pm, but he later testified that he did not know what time it was. *Id.* at 16:8–11, 27:17–21. Mr. Johnson told the man that he would take care of it. *Id.* at 16:10–11. Mr. Johnson then got his "cones and stuff and closed the restroom up." *Id.* at 13:22–24. Mr. Johnson "went . . . to check the toilet [him]self, and the bolts [were] off the toilet seat." *Id.* at 13:24–14:1.

Mark Burdick, a Walmart asset protection manager, testified that he met Mr. Joyner near the bathroom and Mr. Joyner reported to him that he had fallen off the toilet. ECF No. 32-3 at 34:19–24. They went into the bathroom and Mr. Joyner showed Mr. Burdick the stall where the accident had occurred. *Id*. at 34:21–24. Mr. Joyner told Mr. Burdick that the toilet seat was not attached to the bowl, and Mr. Burdick observed the same. *Id.* at 35:4–5, 36:14–17. Mr. Burdick did not observe any "washers or nuts anywhere on the floor of the restroom." *Id.* at 38:15–17. Mr. Burdick testified that, based on his experience installing toilets seats at his home, to install the toilet seat in the Walmart bathroom, "[t]he bolts go in the holes," and the "nuts and washers" would be installed "underneath" and "would [be] tighten[ed] . . . the entire way up the bolt until the toilet seat was secured." *Id.* at 39:2–16. No one had reported any problem with the toilet seat in question to Mr. Burdick before Mr. Joyner. *Id*. at 39:24–40:2. Mr. Burdick did not know when the toilet seat had been installed and was not aware of any repairs before the incident. *Id.* at 40:17–41:1. After Mr. Joyner reported the incident to him, Mr. Burdick "put a ticket in to get the toilet fixed." *Id.* at 41:2–9.

Derrell Turpin testified that he worked with Mr. Joyner at Lexus of Towson from April to October or November 2025. ECF No. 38-5 at 8:3–9:1, 28:16–22. Both Mr. Turpin and Mr. Joyner were sales professionals. *Id.* 11:2–3, 15–17. They did not have a relationship outside of work. *Id.* at 34:10–12. Mr. Turpin would help Mr. Joyner enter customer information into a database at work. *Id.* at 9:2–17. According to Mr. Turpin, Mr. Joyner stopped working "because he was having trouble with the [database], remembering things[,] and [a] couple of times he kind of looked like he was wobbly, dizzy." *Id.* at 12:9–12. Mr. Turpin testified that he attributed these challenges to the fact that Mr. Joyner was "older." *Id.* at 13:7–9. Mr. Turpin has no knowledge of the incident at Walmart or how it affected Mr. Joyner. *Id.* at 13:21–14:1, 14:9–11, 16:6–16, 17:5–20. He did not meet Mr. Joyner until April 2025. *Id.* at 18:9.

4

## II.    DISCUSSION

Pending before the Court are three pretrial motions.  Walmart moves to exclude the expert opinion of Sylvia B. Deyé (ECF No. 33), for summary judgment on Mr. Joyner's negligence claims (ECF No. 32), and to exclude the testimony of Derrell Turpin (ECF No. 38). Each motion is addressed in turn below.

### A.    Sylvia B. Deyé

Sylvia B. Deyé has a master's degree in architecture and is a registered architect in Maryland and other states.  ECF Nos. 33-13 at 10:2–5, 10:12–15; 35-1 at 5.  She is a member of several professional associations for architects and has over 30 years' experience working as an architect.  ECF No. 35-1 at 2–4.  In connection with her work as an architect, Ms. Deyé has selected plumbing fixtures, specified plumbing fixtures on drawings, and inspected plumbing fixtures after installation.  ECF No. 33-13 at 15:6–12.  Since 2018, Ms. Deyé has also served as an expert consultant in commercial and personal injury litigation.  ECF No. 35-1 at 2.  Mr. Joyner retained Ms. Deyé "to determine if the water closet[—or toilet fixture—]was dangerous in a manner that was the cause of Mr. Joyner's fall and whether Walmart created the dangerous condition."  ECF No. 33-12 at 2, 6; *see also* ECF No. 33-13 at 24:13–17.

Ms. Deyé's report contains descriptions of Walmart's cleaning procedures and the incident in question, which is drawn from Mr. Joyner's account.  ECF Nos. 33-12 at 3–5; 33-13 at 31:13–19.  Ms. Deyé does not offer an opinion about the reasonableness of Walmart's cleaning policies and did not conduct an accident reconstruction.  ECF No. 33-13 at 31:4–7, 20–22.  Ms. Deyé observed in her report that:

> The mounting of the incident toilet seat was through two independent hinges.  Each hinge had an integrated threaded bolt. Each integrated bolt is designed to pass through the hole in the porcelain toilet bowl.  The seat is then secured to the base of the toilet bowl by a nut threaded onto the integrated bolt.

ECF Nos. 33-12 at 6; 33-13 at 31:13–19.  Ms. Deyé testified that "[i]t is an industry standard and it's known that unstable toilet seats can be dangerous."  ECF No. 33-13 at 34:8–10.  When asked what specialized training a person would need to recognize that a loose toilet seat could cause someone to fall, Ms. Deyé did not provide a responsive answer.  *Id.* at 45:6–46:2.

Ms. Deyé's report contains four findings.  ECF No. 33-12 at 10.  Ms. Deyé opines that: (1) "the unsecured toilet seat . . . was unreasonably dangerous"; (2) "Walmart should have known through adequate inspections and cleaning procedures that the incident toilet seat was not secured to the toilet bowl"; (3) Walmart's "failure . . . to identify that the incident toilet seat was not secure . . . created the unreasonably dangerous condition that was the cause of Mr. Joyner's . . . injury"; and (4) "Walmart's failure to have replaced the incident toilet seat . . . and identify that the seat was not stable . . . failed to comply with nationally recognized and accepted industry standards for safe plumbing fixtures and created the unreasonably dangerous condition that was the cause of Mr. Joyner's . . . injury."  *Id.*  Ms. Deyé's report offers no explanation or analysis to support these conclusions.  *Id.*  Following a January 15, 2026 site visit to the Walmart store in question, Ms. Deyé supplemented her original report.  ECF Nos. 33-13 at 30:2–4; 33-14.  In her supplemental report, Ms. Deyé discusses her inspection of the incident toilet, other toilets, and the conclusions of Walmart's expert, and concludes that the opinions stated in her original report remain unchanged.  ECF Nos. 33-13 at 30:5–9; 33-14 at 8.

Walmart moves to exclude the testimony of Ms. Deyé because her opinions are not based on scientific, technical, or specialized knowledge; lack a sufficient factual basis; intrude upon the ultimate issue to be decided by the jury; and encompass legal conclusions.  ECF No. 33-1 at 7, 9, 11, 13, 15.  Walmart further contends that testimony regarding Ms. Deyé's site visit should be excluded as irrelevant because, among other things, it did not change her original opinions.  *Id.* at 16.  Mr. Joyner argues the opposite.  ECF No. 35-10.

Under the Federal Rules of Evidence, a witness may be qualified as an expert based on "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Such an expert may testify "in the form of an opinion or otherwise" if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

*Id.* The United States Court of Appeals for the Fourth Circuit has instructed that a trial court "should be conscious of two guiding, and sometimes competing, principles." *Westberry* v. *Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). On the one hand, "Rule 702 was intended to liberalize the introduction of relevant expert evidence," but on the other hand, "expert witnesses have the potential to 'be both powerful and quite misleading.'" *Id.* (quoting *Daubert* v. *Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993)). Thus, as a precursor to admissibility, a trial judge must ensure that expert testimony is both relevant and reliable. *Daubert*, 509 U.S. at 589; *Kumho Tire Co.* v. *Carmichael*, 526 U.S. 137, 137 (1999). "In performing this gatekeeping role, a district court is not intended to serve as a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule." *United States* v. *Smith*, 919 F.3d 825, 835 (4th Cir. 2019) (internal quotation marks and citation omitted); *see also Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

"[A]n expert's testimony is relevant if it has 'a valid . . . connection to the pertinent inquiry.'" *Belville* v. *Ford Motor Co.*, 919 F.3d 224, 232 (4th Cir. 2019) (quoting *Daubert*, 509 U.S. at 592). In other words, the expert testimony or evidence must "'help' the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702 advisory committee's

note to 2023 amendment; *see also Maryland Shall Issue, Inc.* v. *Hogan*, Civil Action No. ELH-16-3311, 2021 WL 3172273, at \*3 (D. Md. July 27, 2021) ("Helpfulness to the trier of fact is 'the "touchstone"' under Rule 702.") (quoting *Kopf* v. *Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993)). As the Fourth Circuit has explained, "[t]here is no gap between the 'specialized knowledge' that is admissible under the rule and the 'common knowledge' that is not.  The boundary between the two is defined by helpfulness." *Kopf*, 993 F.2d at 377.  The expert does not need to "appreciably help," which is "a higher standard than helpfulness" that "is unnecessarily strict."  Fed. R. Evid. 702 advisory committee's note to 2023 amendment.  Any "[d]oubt regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Mack* v. *AmerisourceBergen Drug Corp.*, 671 F. Supp. 2d 706, 709 (D. Md. 2009) (internal quotation marks and citation omitted).  But "[w]hen laypersons are just 'as capable of comprehending the primary facts and of drawing correct conclusions from them' as are experts, expert testimony may properly be excluded." *Scinto v. Stansberry*, 841 F.3d 219, 230 (4th Cir. 2016) (quoting *Salem* v. *United States Lines Co.*, 370 U.S. 31, 35 (1962)).

"A reliable expert opinion must be based on scientific, technical, or other specialized *knowledge* and not on belief or speculation, and inferences must be derived using scientific or other valid methods." *Oglesby* v. *General Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999) (emphasis in original); *see also Daubert*, 509 U.S. at 590 (observing that "the word 'knowledge' connotes more than subjective belief or unsupported speculation").  "To determine whether an opinion of an expert witness satisfies *Daubert* scrutiny, courts may not evaluate the expert witness' conclusion itself, but only the opinion's underlying methodology." *Bresler* v. *Wilmington Tr. Co.*, 855 F.3d 178, 195 (4th Cir. 2017).  The United States Supreme Court has identified several factors that bear on the question of reliability.  "Those factors include: (1) whether a theory or technique can be or has been tested; (2) whether it has been subjected to

peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its operation; and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community." *Cooper* v. *Smith & Nephew, Inc.,* 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 592-594).  These factors are "neither definitive, nor exhaustive." *Id.* (citing *Kumho Tire Co.*, 526 U.S. at 150).

At a minimum, there must be a connection between the data, methodology, and conclusion.  As the Supreme Court has cautioned, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."[2]  *General Elec. Co.* v. *Joiner*, 522 U.S. 136, 146 (1997).  Nevertheless, "questions regarding the factual underpinnings of the [expert witness'] opinion affect the weight and credibility of the witness' assessment, not its admissibility." *Bresler*, 855 F.3d at 195 (alteration in original) (internal quotation marks and citation omitted).  A trial court commits reversible error when it "wade[s] into credibility determinations" that are "framed as a 'reliability' question." *Sommerville* v. *Union Carbide Corp.*, 149 F.4th 408, 426 (4th Cir. 2025).  A "district court may not exclude expert testimony based on (1) its *mere disagreement* with an expert's choice of data or (2) its *own* assessment of the correctness of an expert's opinions." *Id.* at 427 n.7 (emphasis in original) (citing *Bresler*, 855 F.3d at 195).

Finally, the proponent of the expert must establish admissibility by preponderant evidence.  *Cooper*, 259 F.3d at 199.  Proponents do not, however "have to demonstrate . . . by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate . . . that their opinions are reliable." Fed. R. Evid. 702, advisory committee's note to 2000 amendment (internal quotation marks and citation omitted).  "The evidentiary

---

[2] The Latin phrase "*ipse dixit*" means "[s]omething asserted but not proved."  IPSE DIXIT, Black's Law Dictionary (12th ed. 2024).

requirement of reliability is lower than the merits standard of correctness." *Id.*; *see also Reed* v. *MedStar Health, Inc.*, Civil Action No. JKB-20-1984, 2023 WL 5154507, at *10 (D. Md. Aug. 10, 2023) (same).

Here, it is evident that Ms. Deyé has specialized knowledge based on her educational background and 30 years of experience as an architect. Although Walmart takes issue with her expertise with respect to commercial toilets, Ms. Deyé's deposition testimony reflects that she has experience inspecting toilets installed in residential and commercial settings. ECF Nos. 33-1 at 7–8; 33-13 at 15:11–12, 16:15–17:4. Yet, notwithstanding her education and experience, Ms. Deyé's opinions are not based on specialized or technical knowledge, which detrimentally affects both the relevance and reliability of her proposed testimony.

First, Ms. Deyé's observations regarding the method of installing the toilet seat at issue and the fact that an unstable toilet seat can be dangerous are matters of common knowledge. Ms. Deyé's attempt to couch the latter proposition as an "industry standard" falls short. ECF No. 33-13 at 34:8–10. As her own testimony acknowledges, "it's known that unstable toilet seats can be dangerous." *Id.* And, as the testimony of Mr. Burdick illustrates, *see* I., *supra*, installation of a toilet seat is not something that requires specialized or technical knowledge. Ms. Deyé's testimony in this regard therefore would not be helpful to the jury and warrants exclusion. *Scott* v. *Sears, Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986) ("Rule 702 makes inadmissible expert testimony as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance."). As the Fourth Circuit has instructed, expert testimony must be excluded "when the evaluation of the commonplace by an expert witness might supplant a jury's independent exercise of common sense." *Id.* Accordingly, courts in this Circuit have excluded expert evidence that embraces matters of common-sense observations. *Shill* v. *Coastal Ass'n Mgmt., Inc.*, No. 4:23-CV-06351-JD, 2026

WL 705542, at *6 (D.S.C. Mar. 12, 2026) ("[T]he core question here—whether the association exercised reasonable care in addressing the condition of a deteriorating exterior stairway—is not inherently beyond the understanding of a lay jury."); *Anderson* v. *Home Depot U.S.A., Inc.*, Civil Action No. GJH-14-2615, 2017 WL 2189508, at *5 (D. Md. May 16, 2017) ("Jurors will be able to rely on their common sense and life experience to determine whether a bracket, if screwed in properly, should fall on a customer's head, even assuming the customer gently bumps that bracket."); *Page* v. *Supervalu, Inc.*, Civil Action No. WGC-14-1508, 2015 WL 1439572, at *16 (D. Md. Mar. 26, 2015) ("It is common knowledge that a grape on the floor creates a dangerously slippery condition."); *Elliott* v. *Food Lion, LLC*, No. 1:12-CV-1426, 2014 WL 1404562, at *7 (E.D. Va. Apr. 10, 2014) ("[D]etermining whether the hose was open and obvious or whether [the plaintiff] used reasonable care are not inquiries requiring specialized skill or knowledge.").

Second, the fact that Ms. Deyé's proposed testimony is not based on scientific, technical, or specialized knowledge, renders it unreliable and thus inadmissible. Courts in this Circuit routinely exclude expert testimony that is not derived from the most fundamental quality of expert evidence: expertise. *E.g.*, *Modern Remodeling, Inc.* v. *Tripod Holdings, LLC*, Civil Action No. CCB-19-1397, 2021 WL 5234698, at *4 (D. Md. Nov. 9, 2021); *Anderson*, 2017 WL 2189508, at *5; *Casey* v. *Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 343 (D. Md. 2011) (Grimm, J.); *Snoznik* v. *Jeld-Wen, Inc.*, No. CIV.1:09CV42, 2010 WL 1924483, at *19 (W.D.N.C. May 12, 2010); *see also* Fed. R. Civ. P. 702(a) (requiring that expert evidence be based on "scientific, technical, or other specialized knowledge"). The Fourth Circuit has cautioned that "[t]here must be some objective basis to satisfy the district court that the conclusion reached was the product of reliable principles and methods." *Sardis* v. *Overhead Door Corp.*, 10 F.4th 268, 292 (4th Cir. 2021). Here, there is none. No evidentiary support,

11

methodology, or analysis undergirds Ms. Deyé's opinions.  She "points to no principles or methodology utilized in reaching h[er] conclusions, nor does [s]he explain how h[er] experience forms a sufficient basis for these conclusions." *Anderson*, 2017 WL 2189508, at *5.  Her report "simply does not contain the connective tissue of explanation and analysis to bridge the gap between h[er] experience and h[er] opinions proffered in this case." *Alford* v. *NFL Player Disability & Survivor Benefit Plan*, Civil Action No. JRR-23-358, 2025 WL 3274428, at *17 (D. Md. Nov. 24, 2025) (Aslan, J.).  Ms. Deyé offers no more than her own *ipse dixit* to support her four proffered opinions, which is "the hallmark of an unreliable opinion." *Sardis*, 10 F.4th at 296.  Case law makes clear that "it still is a requirement that the expert opinion evidence be connected to existing data by something more than the 'it is so because I say it is so' of the expert." *Holesapple* v. *Barrett*, 5 Fed. Appx. 177, 180 (4th Cir. 2001); *McCoy* v. *Biomet Orthopedics, LLC*, Civil Action No. ELH-12-1436, 2021 WL 252556, at *20 (D. Md. Jan. 25, 2021) ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.") (quotation marks and citation omitted).[3]

The opinions offered in Ms. Deyé's supplemental report will likewise be excluded. Federal Rule of Civil Procedure 26(e) governs the supplementation of discovery disclosures and responses.  As a sister court has explained, "Rule 26(e) envisions supplementation when a party's discovery disclosures happen to be defective in some way so that the disclosure was incorrect or incomplete and, therefore, misleading." *Akeva L.L.C.* v. *Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002).  This rule does not, however, "cover failures of omission because the expert did an inadequate or incomplete preparation." *Id.* (rejecting a purported expert report

---

[3]  Further, to the extent that Ms. Deyé "merely summarizes [Tony Joyner's] testimony and lends it greater credence," it is also subject to exclusion. *Modern Remodeling, Inc.* v. *Tripod Holdings, LLC*, Civil Action No. CCB-19-1397, 2021 WL 5234698, at *5 (D. Md. Nov. 9, 2021).

supplementation as "an out-of-time disclosure").  Because Ms. Deyé's supplemental report seeks

to "add information that is missing from the original report" and does "not attempt[ ] to correct

the original report because it is misleading," it is untimely.[4]  *Thomasville Furniture Indus., Inc.*

v. *Pulaski Furniture Corp.*, No. 1:09CV591, 2011 WL 13239926, at *2 (M.D.N.C. Dec. 1,

2011).  Moreover, analysis of Ms. Deyé's supplemental report reveals that the probative value of

her conclusions would be substantially outweighed by the danger of unfair prejudice and

confusion of the issues.  Fed. R. Evid. 403.  In her supplemental report, Ms. Deyé notes that

during her site inspection—which occurred nearly two years after the incident in question—she

observed that toilet seats in the men's and women's restrooms were not secured.  ECF No. 33-14

at 2.  The condition of the restrooms, one of which is not at issue in this case, nearly two years

after the fact has no bearing on whether Walmart had actual or constructive notice of the

defective condition at the time Mr. Joyner was injured.  Ms. Deyé's testimony in this regard is

likewise inadmissible.  *Cf. Saldana* v. *Kmart Corp.*, 260 F.3d 228, 233 (3d Cir. 2001) (affirming

exclusion of expert testing regarding the size of the puddle after plaintiff's fall that the district

court had excluded as irrelevant, confusing, misleading, and unreliable); *see also Tyree* v. *Boston

Sci. Corp.*, 54 F. Supp. 3d 501, 543 (S.D.W. Va. 2014), *as amended* (Oct. 29, 2014) (noting that

Rule 403 "carries particular significance in *Daubert* decisions because '[e]xpert evidence can be

both powerful and quite misleading.'") (quoting *Daubert*, 509 U.S. at 595).

---

[4]  The initial Scheduling Order provided that, as to Mr. Joyner, Federal Rule of Civil Procedure 26(a)(2) initial disclosures were due on October 8, 2025; Rule 26(a)(2) rebuttal expert disclosures were due on November 21, 2025; and Rule 26(e)(2) supplemental expert disclosures were due on November 28, 2025.  ECF No. 16.  The Court subsequently extended Mr. Joyner's rebuttal expert disclosure deadline to December 21, 2025.  ECF No. 23.  This Order did not extend Mr. Joyner's deadline for supplemental expert disclosures.  *Id.*  Likewise, the subsequent Order that extended discrete discovery deadlines did not alter the operative Rule 26 deadlines.  ECF No. 29.  Sylvia B. Deyé's supplemental report was prepared on January 20, 2026 (ECF No. 33-14 at 1), which was one month after all of Mr. Joyner's expert disclosures deadlines had expired (ECF Nos. 16; 23; 29).

**B.    Summary Judgment**

Walmart also moves for summary judgment.  ECF No. 32.  Summary judgment motion practice "is properly regarded . . . as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  Federal Rule of Civil Procedure 56 provides that the district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original).  A material fact is one that "might affect the outcome of the suit under the governing law."  *Id.* at 248.  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  Thus, to defeat summary judgment, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *First Nat. Bank of Ariz.* v. *Cities Serv. Co.*, 391 U.S. 253, 288-289 (1968).  On the other hand, summary judgment "is justified if, from the totality of the evidence presented, including pleadings, depositions, answers to interrogatories, and affidavits, the court is satisfied that there is no genuine factual issue for trial and the moving party is entitled to judgment as a matter of law."  *Sylvia Dev. Corp.* v. *Calvert Cnty., Md.*, 48 F.3d 810, 817 (4th Cir. 1995).

The Fourth Circuit has cautioned that summary judgment "cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits."  *Jacobs* v. *N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568-569 (4th Cir. 2015) (quoting

14

10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER ET AL., FEDERAL PRACTICE & PROCEDURE § 2728 (3d ed. 1998)).  At this stage, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.  In doing so, the district court "must view the evidence in the light most favorable to . . . the nonmovant and draw all reasonable inferences in [its] favor without weighing the evidence or assessing the witnesses' credibility." *Baynard* v. *Malone*, 268 F.3d 228, 234-235 (4th Cir. 2001).  At the same time, "[i]t is the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat* v. *Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks and citation omitted); *see also Celotex Corp.*, 477 U.S. at 323-324 ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

Here, Mr. Joyner's Amended Complaint pleads two counts of premise liability negligence against Walmart.  ECF No. 19.  In an action brought under a federal court's diversity jurisdiction, the court is to apply the substantive law of the state in which it sits.  *Mathis* v. *Terra Renewal Serv. Inc.*, 69 F.4th 236, 242 (4th Cir. 2023); *Lewis* v. *Waletzky*, 422 Md. 647, 657 (2011).  In Maryland, "[t]he elements of a cause of action for negligence are (1) a legally cognizable duty on the part of the defendant owing to the plaintiff, (2) a breach of that duty by the defendant, (3) actual injury or loss suffered by the plaintiff, and (4) that such injury or loss resulted from the defendant's breach of the duty."  *Green* v. *N. Arundel Hosp. Ass'n, Inc.*, 366 Md. 597, 607 (2001).  In the context of premises liability, a property owner's duty of care to one who enters the property depends upon the entrant's legal status.  *Baltimore Gas & Elec. Co.* v. *Flippo*, 348 Md. 680, 688 (1998); *Rivas* v. *Oxon Hill Joint Venture*, 130 Md. App. 101, 109 (2000).  Maryland law recognizes four classifications of entrants: "an invitee (*i.e.*[,] a business

invitee), a licensee by invitation (*i.e.*, a social guest), a bare licensee, or a trespasser." *Tennant* v. *Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 387-388 (1997). "The highest duty is owed to a business invitee, defined as 'one invited or permitted to enter another's property for purposes related to the landowner's business.'" *Id.* at 388 (quoting *Casper* v. *Chas. F. Smith & Son, Inc.*, 71 Md. App. 445, 457 (1987), *aff'd*, 316 Md. 573 (1989)). A store owner is not, however, an insurer of the safety of customers, *i.e.*, business invitees, and there is no presumption of negligence on the part of the owner merely from the fact that a customer sustained an injury in the owner's store. *Giant Food, Inc.* v. *Mitchell*, 334 Md. 633, 636 (1994); *Moulden* v. *Greenbelt Consumer Serv., Inc.*, 239 Md. 229, 232 (1965). A store owner must only "exercise reasonable care to 'protect the invitee from injury caused by an unreasonable risk' that the invitee would be unlikely to perceive in the exercise of ordinary care for his or her own safety, and about which the owner knows or could have discovered in the exercise of reasonable care." *Tennant*, 115 Md. App. at 388 (quoting *Casper*, 71 Md. App. at 457). Thus, to sustain a negligence cause of action in a premises liability case, the business invitee must show that the store owner created the dangerous condition or had actual or constructive knowledge that it existed. *Moulden*, 239 Md. at 232; *Rehn* v. *Westfield Am.*, 153 Md. App. 586, 593 (2003); *Tennant*, 115 Md. App. at 389.

In support of summary judgment, Walmart argues that there is no evidence that it created the alleged hazard or that it had actual or constructive notice that such a condition existed. ECF No. 32-1 at 5. Walmart contends that without this evidence, Mr. Joyner cannot prove that it breached any duty, and Walmart is therefore entitled to judgment as a matter of law. *Id.* Mr. Joyner argues, among other things, that Mr. Johnson's deposition testimony establishes that Walmart had actual knowledge of the unsecured toilet seat prior to Mr. Joyner's fall. ECF No. 34-9 at 10. As the record—and Mr. Johnson's deposition testimony, in particular—makes

clear, there is a material dispute of fact that precludes entry of summary judgment. Importantly, there is no evidence as to when or how the toilet seat was installed, thus foreclosing a determination that Walmart created the dangerous condition. The evidence as to whether Mr. Johnson had notice of the unsecured toilet seat before or after Mr. Joyner's injury is conflicting. *See* I., *supra*. It is not the Court's role to weigh evidence, evaluate credibility, or make factual determinations. The existing record does not establish whether or not Walmart breached its duty to Mr. Joyner, and summary judgment is therefore inappropriate.

Walmart argues in the alternative that Mr. Joyner was contributorily negligent because he "jumped up from the sliding toilet." ECF No. 32-1 at 14. As Mr. Joyner notes (ECF No. 34-9 at 14), the issue of contributory negligence is ill-suited for resolution on a motion for summary judgment. *E.g.*, *Leakas* v. *Columbia Country Club*, 831 F. Supp. 1231, 1236 (D. Md. 1993) ("Whether a given plaintiff was contributorily negligent is ordinarily a question of fact reserved for the jury."). Maryland's highest Court has explained that "[i]n order to withdraw a case from the jury on the ground of contributory negligence, the evidence must show some prominent and decisive act which directly contributed to the accident and which was of such a character as to *leave no room for difference of opinion thereon by reasonable minds*." *Rooney* v. *Statewide Plumbing & Heating--Gen. Contractors, Inc.*, 265 Md. 559, 564 (1972) (emphasis added). Because reasonable jurors could reach differing conclusions as to whether Mr. Joyner was contributorily negligent, summary judgment is also inappropriate on this basis. Walmart's motion is therefore denied.

**C.    Derrell Turpin**

Finally, Walmart moves to exclude Mr. Turpin's testimony as lacking personal knowledge. ECF No. 38. Federal Rule of Evidence 602 provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has

17

personal knowledge of the matter.  Evidence to prove personal knowledge may consist of the witness's own testimony."  Rule 602 "does not require that the witness' knowledge be positive or rise to the level of absolute certainty."  *M.B.A.F.B. Fed. Credit Union* v. *Cumis Ins. Soc., Inc.*, 681 F.2d 930, 932 (4th Cir. 1982).  Further, the "quality of a witness's observations is not an issue for foundations; it is a matter for impeachment."  *Sherin* v. *Crane-Houdaille, Inc.*, 47 F. Supp. 3d 280, 287-288 (D. Md. 2014) (quoting *Adkins* v. *Dirickson,* 523 F. Supp. 1281, 1284-1285 (E.D. Pa. 1981) (quotation marks omitted)).  Evidence is inadmissible under Rule 602 only where the trial court finds that "the witness could not have actually perceived or observed" that to which the witness testifies.  *M.B.A.F.B. Fed. Credit Union*, 681 F.2d at 932

Here, Walmart correctly notes that Mr. Turpin does not have firsthand knowledge of the January 19, 2024 incident at Walmart.  ECF No. 38-1 at 5.  He therefore cannot testify as to the event or its immediate effect upon Mr. Joyner.  Mr. Turpin did, however, personally observe Mr. Joyner's physical and mental capabilities when they worked together in 2025.  *See* I., *supra*. Presumably, Mr. Joyner intends to offer evidence that the effects of the occurrence endured beyond the date of the incident.  Assuming Mr. Joyner offers such evidence and can establish that the issues Mr. Turpin observed were causally connected to the Walmart incident, Mr. Turpin will be permitted to testify as to his observations.[5]  If Mr. Joyner does not lay an appropriate foundation that renders Mr. Turpin's testimony relevant, Walmart may renew its motion.

---

[5]  Under Maryland law, expert testimony may be required to establish causation of injuries.  Interpreting Maryland law, the United States Court of Appeals for the Fourth Circuit has explained:

> Expert testimony is not required . . . if the case falls into one of three categories: (1) if "a disability develops coincidentally with," or within a "reasonable time after," the subject act; or (2) if the proof of causation is "clearly apparent" from the nature and circumstances of the injury; or (3) if "the cause of the injury relates to matters of common experience, knowledge, or observation of laymen."

III.   CONCLUSION

For the foregoing reasons, Walmart's motion to exclude expert testimony of Ms. Deyé is granted and its motions for summary judgment and to exclude the testimony of Mr. Turpin are denied.  A separate Order follows.


Date:  June 3, 2026                                             /s/
                                                        Erin Aslan
                                                        United States Magistrate Judge

---

*Galloway* v. *Horne Concrete Const.*, 524 Fed. Appx. 865, 871 (4th Cir. 2013) (quoting *Wilhelm* v. *State Traffic Safety Comm'n*, 230 Md. 91, 99 (1962)).  Applying the *Wilhelm* criteria, the Fourth Circuit held in *Galloway* that "no experts [we]re needed to establish that being rear-ended by an eighteen-wheel tractor-trailer in a multi-vehicle interstate accident can cause lower-back injuries."  524 Fed. Appx. at 871; *see also Neal* v. *United States*, 599 F. Supp. 3d 270, 292-293 (D. Md. 2022) (collecting numerous examples of when an expert was and was not required to establish causation).

On the other hand, expert testimony is required "where the cause of an inj[u]ry claimed to have resulted from a negligent act is a complicated medical question involving fact finding which properly falls within the province of medical experts (*especially when the symptoms of the injury are purely subjective in nature, or where disability does not develop until some time after the negligent act*)."  *Wilhelm*, 230 Md. at 100 (emphasis added) (collecting cases).  There is "no hard and fast rule," *S.B. Thomas, Inc.* v. *Thompson*, 114 Md. App. 357, 382-383 (1997), and a determination of "whether the particular injury asserted requires expert testimony to establish causation is often a difficult and fact-sensitive undertaking," *Neal*, 599 F. Supp. 3d at 291.  The question of whether causation is a "complicated medical question" that requires expert testimony "calls for a robust dose of that not-so-common commonsense."  *Hunt* v. *Mercy Med. Ctr.*, 121 Md. App. 516, 538 (1998).  Nevertheless, it is "clear . . . that when there is a genuine issue as to whether there is a causal connection between an earlier injury and a subsequent disability, in the majority of cases it will be a complicated medical question requiring, as a matter of law, expert medical testimony."  *S.B. Thomas, Inc.*, 114 Md. App. at 383.

19